**Entered on Docket**
**December 10, 2014**
**EDWARD J. EMMONS, CLERK**
**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**




**The following constitutes the order of the court. Signed December 9, 2014**

**Charles Novack**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>DIANA MARIE ROSA,<br><br>Debtor. | Case No. 14-44626 CN<br>Chapter 13<br><br>**MEMORANDUM DECISION AND ORDER SUSTAINING DEBTOR'S OBJECTION TO EMC MORTGAGE PROOF OF CLAIM AND CONFIRMING CHAPTER 13 PLAN** |

On September 19, 2014 this court conducted hearings on the Debtor's contested Second Amended Chapter 13 plan and her objection to the proof of claim filed by EMC Mortgage, LLC ("EMC"), which holds a second deed of trust against her Monterey residence. Chapter 13 Debtor Diana Rosa ("Rosa") filed this case soon after receiving a Chapter 7 discharge. This court already has entered an order in this Chapter 13 case valuing her Monterey residence at $350,000, which, given the amount due on the senior note, rendered EMC an unsecured claimholder. Rosa now seeks to confirm her Chapter 13 plan, which will pay her unsecured creditors in full. Rosa does not believe that EMC holds an allowed, unsecured claim. The Chapter 13 Trustee disagrees, and she contends that Rosa's Chapter 13 plan therefore will not fund.

Rosa filed this Chapter 13 case on January 15, 2013 following her receipt of a Chapter 7 discharge (in case no. 12-56842 ASW) on January 26, 2012. When she filed her Chapter 7 case, Rosa owned her residence located at 34 Work Avenue, Monterey, California (the "Monterey Residence"), which was subject to EMC's note and second deed of trust. Rosa's Chapter 7 discharge eliminated her personal liability on EMC's promissory note. EMC retained, however, its *in rem*



UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

rights against the Monterey Residence. *See Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991).

When Rosa filed her Chapter 13 case, she valued the Monterey Residence at 350,000.00, and listed two deeds of trust against it: a first deed of trust held by Aurora Bank, securing a $701,802.00 promissory note, and EMC's second deed of trust, securing an $94,813.49 note balance.[1] Rosa thereafter filed a motion to value her Monterey Residence at $350,000, which this court granted by order dated April 1, 2014. This order determined that EMC was not a secured creditor, and that its lien would be avoided when Rosa finished her Chapter 13 plan payments.

Rosa filed her Second Amended Chapter 13 plan on July 30, 2014 (the "Plan"). Since she cannot receive a Chapter 13 discharge[2], Rosa proposes to pay her general, unsecured creditors in full. The Chapter 13 claims register lists three claims: Aurora Bank's first deed of trust, on which there is $44,400.25 in arrears; an IRS claim asserting an $8,560.96 priority claim and a $266.04 general unsecured claim; and EMC's $84,813.49 claim. The Plan calls for eighteen monthly payments of $141.00, followed by 42 payments of $435.00. The Plan also contemplates that she will cure the Aurora Bank arrears through a loan modification.

Rosa's Plan payments are insufficient to pay EMC's proof of claim, and the Plan states that "Neither the Debtor nor the Trustee shall disburse funds to creditor EMC . . . as such debt was discharged in Debtor's prior Chapter 7 bankruptcy case, Case No. 12-56842 ASW." The Chapter 13 Trustee has objected to Plan confirmation, contending that EMC has a valid unsecured claim and must be paid in full. If the Trustee is correct, the Plan will not fund, as it will need to run for 325 months to satisfy the general unsecured creditor class.

Rosa objected to EMC's claim in conjunction with Plan confirmation. Rosa argues that her motion to value eliminated EMC's lien for purposes of Chapter 13 treatment, and her Chapter 7 discharge terminated her personal liability. As a result, she contends that the claim should be entirely disallowed. Interestingly, the Chapter 13 Trustee, and not EMC, responded to Rosa's claim

---

[1] Rosa's Schedule D listed EMC's claim at $79,166.00.

[2] See Bankruptcy Code § 1328(f)(1).

objection. The Chapter 13 Trustee again asserts that EMC's claim cannot be "disallowed solely on the basis that the Debtor obtained a discharge of her *in personam* liability for her unsecured debts in her prior chapter 7 case."

The court is not convinced that the Bankruptcy Code allows EMC to resurrect its *in personam* rights against Rosa in this Chapter 13. No one disputes that EMC held an *in rem* claim as of the petition date. *See Johnson v. Home State Bank*, *supra*; Bankruptcy Code §102(2). Rosa's motion to value, however, conditionally terminated EMC's lien rights in this case (pending plan completion), and nothing in the Bankruptcy Code mandates that EMC has an *allowed*, unsecured claim as a result.

Bankruptcy Code §506(a)(1) authorized Rosa to value the Monterey Residence to determine if EMC had an allowed, secured claim in her Chapter 13 case. This code section provides in pertinent part that "An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim." This court has determined that EMC does not have a secured claim in Rosa's Chapter 13 case. How then to treat its unsecured claim? Bankruptcy Code § 506 does not address this question. The purpose of § 506(a)(1) is to determine whether a secured claim exists and how it should be treated. It does not address the merits of the unsecured claim. As stated in *In re Hill*, 440 B.R. 176 (Bankr. S.D. Cal. 2010), §506(a) "only prescribes how a secured claim is to be treated, not whether the underlying claim is allowed or disallowed." *Id*. at 184.

The term "claim" is a term of art, and it does not, on its face, denote or determine whether the amount sought is allowed under the Bankruptcy Code. Bankruptcy Code § 101(5)(a) provides that "[t]he term 'claim' means - a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured . . . ." With its unsecured claim in hand, EMC's rights are determined by Bankruptcy Code §502(b). *See* 4 Collier on Bankruptcy ¶ 506.1 (16th ed. 2010). That Code section provides in pertinent part that "the court, after notice and a hearing, shall determine the

amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that - (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . ."

All parties agree that Rosa discharged her personal liability to EMC in her Chapter 7 case. *See* Bankruptcy Code §727(b). We thus find our "applicable law" in Bankruptcy Code § 524(a)(1) which states that Rosa's Chapter 7 discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover or offset any such debt as a personal liability of the debtor. . . ." The discharge injunction "provides for a broad injunction against not only legal proceedings, but also any other acts to collect a discharged debt as a personal liability of the debtor . . . . It extends to all forms of collection activity . . . ." 4 Collier on Bankruptcy ¶ 524.02[2](16th ed. 2010). Such collection activity includes filing proofs of claim in subsequent bankruptcy filings. *See, e.g*., *In re McLean*, 2013 Bankr.LEXIS 4743 (Bankr. M.D.Ala. Nov. 8, 2013).

This court is not otherwise persuaded by the admittedly abundant case law cited by the Chapter 13 Trustee. While the Chapter 13 Trustee cites several cases within the Ninth Circuit in support of her argument, only a few of them delve deeply into this issue. For example, in *In re Akram*, 259 B.R. 371 (Bankr. C.D.Cal. 2001), the bankruptcy court determined that stripped off junior lien holders hold allowed, unsecured claims in a Chapter 20 case. While the court acknowledged that the Akrams had discharged their personal liability on the junior promissory notes in their previous Chapter 7 case (the liens were secured by the Akrams' residence), the bankruptcy court found (without alluding to § 502(b)) that these lienholders held allowed, unsecured claims in their subsequent Chapter 13. The bankruptcy court determined that under *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), the discharge injunction resulting from the Chapter 7 case only removed the Akrams' *in personam* liability and did not affect the validity of the secured "claim" itself. The court then concluded that:

> "because the amount of these secured claims remain unaffected by the Chapter 7 discharge, the "Lam-stripping" of these secured claims in the chapter 13 case resulted in valuing the secured claims at zero secured, for chapter 13 purposes, and turned the

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California



Case: 14-44626 Doc# 73 Filed: 12/09/14 Entered: 12/10/14 08:18:51 Page 4 of 8

> full amount owed to each creditor (pursuant to the creditor's Note) into a general unsecured claim for chapter 13 plan purposes . . . . Section 524 does not support Debtors' request that these unsecured claims be valued at zero for chapter 13 plan purposes, due to the prior chapter 7 discharge." *Id*. at 378-79.

This court respectfully disagrees with the *Akram* court's holding. As stated above, claims analysis is a function of Bankruptcy Code § 502, and the *Akram* court never examined whether the junior lienholders held allowed unsecured claims under this Code section. Second, this court rejects the *Akram* court's attempt to circumscribe the power of the discharge injunction. Simply, if a Chapter 7 discharge and Bankruptcy Code § 524 limit a lienholder to its *in rem* rights, what Bankruptcy Code section resurrects its *in personam* rights in a subsequent Chapter 13 case? No one disputes that the *Akram* junior lienholders held a secured claim as of the Chapter 13 petition date. Yet the court does not cogently explain why, after eliminating their *in rem* rights through a motion to value, these lienholders held allowed, unsecured claims for discharged debts. Disallowing their unsecured claims does not undermine in any sense the *Dewsnup* or *Johnson v. Home State Bank* holdings.

*In re Gounder*, 266 B.R. 879 (Bankr. E.D.Cal. 2001) is also frequently cited in support of the Chapter 13 Trustee's argument that stripped off junior lienholders hold allowable unsecured claims in a Chapter 20 case. The *Gounder* court also considered this issue in the context of a Chapter 20 motion to value real property. Here, the bankruptcy court granted the debtor's motion to value his real property, leaving the junior lienholder wholly unsecured. The Chapter 13 debtor then objected to the creditor's unsecured proof of claim, asserting that his personal liability was discharged in a prior Chapter 7 case. The bankruptcy court overruled the objection on several grounds. First, the *Gounder* court joined *Akram* and held that sustaining such an objection would allow the debtor to evade *Dewsnup*'s prohibition against Chapter 7 lien strips. The *Dewsnup* "rule would be evaded if the debtor could first file chapter 7 to discharge personal liability then file a chapter 13 petition to strip the lien without paying the under-secured portion of the claim with other unsecured claims." *Id*. at 880-81. The *Gounder* court then relied on *Johnson v. Home State Bank* to find that the lien that survived the Chapter 7 discharge was essentially a recourse note against the Chapter 13 estate under Bankruptcy Code § 506. After citing to *Johnson v. Home State Bank*, the court continues that:



UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

> "In this case, the [lienholder] has no right to enforce its claim against the debtor because of the prior chapter 7 discharge. But, as of the petition date, it had retained the right to satisfy its claim against some of the debtor's property. That property has become property of the bankruptcy estate. Therefore, even though the debtor received a chapter 7 discharge, the [lienholder] had an allowable claim in the debtor's subsequent chapter 13 case. [¶] The use of . . . § 506(a) pursuant to *Lam* in the Chapter 13 case resulted in the completely undersecured claim being converted into an unsecured claim against the chapter 13 estate (as opposed to the debtor). [¶] Effectively, the discharged debt is a nonrecourse debt. Because of the Chapter 7 discharge, the claimant cannot sue the debtor but can foreclose on its security. The intervention of the chapter 13 petition and the application of section 506(a), however, prevent it from pursuing its collateral. Consequently, the claimant has an unsecured claim against the estate." *Id*. at 881.

The court respectfully disagrees with this attempt to impose liability on the Chapter 13 bankruptcy estate where none exists for the Chapter 13 debtor. Bankruptcy Code § 101(10) defines the term "creditor" as an entity "(A) . . . that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor; (B) . . .that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(I) of this title; or (C) . . . that has a community claim." All the creditors at issue in *Akram*, *Gounder*, and herein fall squarely - and only - within §101(10)(A). There is no language in § 506(a) which suggests otherwise. In other words, if these creditors do not have an allowable unsecured claim against the Chapter 13 debtor, they do not have an allowable unsecured claim that must be paid through the Chapter 13 plan. Moreover, Congress knows how to turn a nonrecourse claim into a recourse obligation (*see* §1111(b)(1)), and no such text can be found in §506(a)(1). In addition, this court's analysis does not run afoul of *Johnson v. State Home Bank.* There, the Supreme Court determined that a Chapter 7 discharge does not eliminate a secured creditor's *in rem* rights against real property in a subsequent Chapter 13 case, and that this *in rem* remedy constitutes a claim (against the debtor's real property) in that Chapter 13. The Supreme Court did not hold nor suggest that this allowed secured claim would, by definition, be an allowed, unsecured claim if a § 506(a)(1) motion renders the secured claim valueless. Finally, the *Gounder* court's attempt to protect *Dewsnup* is better suited for a bad faith objection (*see*, *e.g.*, *In re Tran*, 814 Fed.Supp.2d 946 (N.D.Cal. 2011); *In re Lepe*, 470 B.R. 851 (Bankr. 9th Cir. 2012)), and

the Chapter 13 Trustee has not objected on that grounds herein.[3]

This decision is by no means an outlier. The Bankruptcy Court in *In re Sweitzer*, 476 B.R. 468 (Bankr. D.Md. 2012) addressed this very issue and similarly found that the stripped off junior lienholder did not have an allowed, unsecured claim in the Chapter 20 case. That court held that "Real Time's *in personam* rights and claims against the debtors were discharged in their prior Chapter 7 case. Those *in personam* rights and claims cannot now be resurrected and allowed as an unsecured claim in this case in contravention of that discharge simply because Real Time's *in rem* rights were stripped off in this case. . . . [F]or purposes of this case Real Time is now left with neither *in personam* nor *in rem* rights against the debtors, and thus holds no allowable claim against the debtors or their property that would entitle it to receive distributions under the Chapter 13 plan in this case." *Id*. at 472-73. See also *In re Scantling*, 465 B.R. 671 (Bankr. M.D.Fla. 2012).

Accordingly, Rosa's claim objection is sustained and EMC's claim is disallowed, the Chapter 13 Trustee's objection to Plan confirmation is overruled, and the Plan is confirmed.

* * * END OF ORDER * * *

---

[3] This court's holding is also consistent with the treatment of non-recourse secured claims for purposes of determining Chapter 13 eligibility. The unsecured portion of the non-recourse secured claim is not counted towards the unsecured debt ceiling in Bankruptcy Code § 109(e). *See*, *e.g.*, *In re Medina*, 2010 Bankr. LEXIS 1128 (Bankr. N.D.Cal. Apr. 12, 2010). The court also notes that while the Chapter 13 Trustee cites *In re Hill,* 440 B.R. 176 (Bankr. S.D. Cal. 2010) in support of her objection to confirmation, that court never reached the issue of whether the stripped off lienholder's unsecured claim was allowable, since no party had objected to it.



UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Case: 14-44626 Doc# 73 Filed: 12/09/14 Entered: 12/10/14 08:18:51 Page 7 of 8

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Case No. 14-44626 CN

**COURT SERVICE LIST**

Diana Marie Rosa
34 Work Avenue
Monterey, CA 93940

Other Recipients are ECF participants